UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

███████████████, 

              Plaintiff,

    v.

THE INDIVIDUALS, BUSINESS ENTITIES, AND
UNINCORPORATED ASSOCIATIONS IDENTIFIED ON
EXHIBIT 1,

              Defendants.

Civil Action No. 4:26-CV-00174-RWS

**PLAINTIFF'S AMENDED *EX PARTE* MOTION FOR, AND MEMORANDUM IN
SUPPORT OF, ENTRY OF A (1) TEMPORARY RESTRAINING ORDER,
(2) EXPEDITED DISCOVERY ORDER, AND (3) ASSET RESTRAINING ORDER**

1

## MOTION

███████████████████████ ("Plaintiff") seeks entry of an *ex parte* (1) Temporary Restraining Order, (2) Asset Restraining Order, (3) Expedited Discovery Order, and issuance of a Preliminary Injunction sustaining all relief herein requested. A Memorandum of Law in support is filed concurrently below.

## MEMORANDUM OF LAW
### I.   Introduction

Defendants[1] are infringing on Plaintiff's copyrights. As alleged in Plaintiff's Complaint, Defendants are making infringing use of Plaintiff's Media[2] protected by ██████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████ ██ ██ ██████ ███ ██ ██ ████ ██████ ████ ██

██████████████████████ (collectively, the "Registrations").[3] Plaintiff uses the Media to promote its proprietary ████████████████. Defendants have reproduced and are selling these same products utilizing infringing reproductions of the Media through interactive commercial webstores ("Infringing Webstores") hosted by various e-commerce platforms like Alibaba, AliExpress, Amazon, Bonanza, CJDropshipping, DHgate, eBay, Etsy, Fruugo, Joom, Joybuy, Newegg, Shopify, Temu, Walmart, and Wish ("Marketplaces").[4] Defendants direct these unlawful business activities toward consumers in Texas (Ex. 1, ¶ 14) and have caused and will continue to cause irreparable injury to Plaintiff if not enjoined. Plaintiff is thus forced to file this action to combat Defendants' illegal infringement of its Media through the Infringing Webstores.

---

[1] "Defendants" collectively refers to those identified in Exhibit 1 of Plaintiff's Complaint.
[2] "Media" collectively refers to the registered works exhibited in Exhibit 4 of Plaintiff's Complaint.
[3] *See* Exhibit 3 to Plaintiff's Complaint.
[4] *See* Exhibit 2 to Plaintiff's Complaint.

Defendants should not be allowed to continue their unlawful activities. Plaintiff respectfully requests that the Court issue ex parte orders: (1) temporarily enjoining Defendants from using and displaying the Media; (2) temporarily disabling the pages featuring the Media on the Infringing Webstores and restricting the transfer of Defendants' assets pending a final judgment to preserve Plaintiff's right to an equitable accounting; and (3) expediting discovery to permit Plaintiff to inspect and copy Defendants' records related to their infringing use of the Media.

## II.  Statement of Facts

Plaintiff designs, manufactures, distributes, and sells its proprietary ███████ ███ worldwide, including in the Eastern District of Texas (collectively, Plaintiff's "Products"). Ex. 1, ¶ 6. Plaintiff owns all right, title, and interest in and to the Media and the Registrations. *Id*. at ¶ 4. Plaintiff has expended considerable resources advertising, marketing, and promoting the Products by use of the Media, and these efforts have resulted in Plaintiff's accumulation of invaluable consumer goodwill. *Id*. at ¶¶ 5-6. Plaintiff discovered that Defendants were using the Media without authorization to promote their own similar, yet lower-quality products, and Plaintiff confirmed that Defendants were offering said products for sale to U.S. and Texas residents. *Id*. at ¶¶ 11-14.  Defendants and the Infringing Webstores do not conduct business with Plaintiff and do not have the right or authority to use, reproduce, or display the Media in any manner whatsoever. *Id*. at ¶ 9. Defendants' unauthorized and infringing use of the Media and undercutting of Plaintiff's prices has caused significant harm to Plaintiff's business operations, which have declined markedly since Plaintiff first became aware of these infringing activities. *Id*. at ¶¶ 12-13.

Defendants' infringing activities undermine Plaintiff's ability to control the use and licensing of its Media and interfere with its exclusive rights under the Copyright Act. 17 U.S.C. § 106. Such loss of control over the Media is neither calculable nor precisely compensable. Given

3

the online nature of Defendants' commercial activities, Defendants have substantially benefitted from their unlawful tactics and infringement of the Media to profit from the sale of their substandard, knockoff products.

### III. Argument

Defendants' willfully infringing conduct is causing and will continue to cause irreparable harm to Plaintiff's reputation and goodwill. As such, Plaintiff respectfully requests that this Court issue a temporary restraining order that, *inter alia*, freezes Defendants' assets and prevents the Infringing Webstore pages from displaying the Media. Without the relief requested, Defendants' infringing activities will continue unabated, and Plaintiff will continue to suffer irreparable harm.

### A.  Plaintiff is Entitled to *Ex Parte* Relief

Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* temporary restraining order where "immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1). A plaintiff may further obtain *ex parte* injunctive relief under Rule 65(b) of the Federal Rules of Civil Procedure by showing either (1) that "notice to the adverse party is impossible, or in cases where the adverse party is unknown or is unable to be found[,]" or (2) that "notice to the defendant would render fruitless further prosecution of the action."[5]

Defendants operate the Infringing Webstores from foreign jurisdictions using fictitious names, and they do not provide their mailing or physical contact addresses. Ex. 1 ¶ 16. Defendants' true identities are therefore unknown, and Defendants are unable to be found. Plaintiff cannot give notice in this matter because even the email addresses Defendants use to operate and withdraw

---

[5] *Davis v. Angelina Coll. Bd. of Trs.*, No. 9:17-CV-179, 2017 U.S. Dist. LEXIS 188249, at *3 (E.D. Tex. 2017); *First Command Bank v. Exner*, No. 4:21-CV-00621-P, 2021 WL 4047400, at *1 (N.D. Tex. 2021); *Anyadike v. Vernon Coll.*, No. 7:15-CV-00157-O, 2015 WL 12964684, at *2 (N.D. Tex. Nov. 20, 2015); *Golden Cheek Ventures, L.P. v. Brazos Elec. Power Coop., Inc.*, No. 4:15-CV-0821-O, 2015 RWL 13469996, at *1 (N.D. Tex. 2015); *see also Hurtado v. JPMC Specialty Mortg. LLC*, No. 4:14-CV-907-O, 2014 WL 12531234, at *1 (N.D. Tex. 2014).

money from the Infringing Webstores are not publicly available. Ex. 2, ¶ 6. Hence, no effective notice has been given, as Defendants operate anonymously, leaving Plaintiff with no means of contact. *Id*.

Notwithstanding that a court order requiring disclosure of Defendants' email addresses is necessary to provide notice of these proceedings, formal notice should not be required in this instance. Defendants engage in the unauthorized reproduction of Plaintiff's copyrighted Media to profit from the sale of infringing products and are expected to transfer data, products, and financial assets to other webstores and accounts if they become aware of these proceedings before the requested relief is granted. Ex. 2, ¶ 7. Simply put, Plaintiff will be unable to recover in this action if the Defendants are noticed prior to the injunctive relief being granted, for such notice would effectively "render fruitless further prosecution of the action." *See Davis, 2017 U.S. Dist. LEXIS 188249, at \*3*; *see also Id.* Thus, notwithstanding that Plaintiff has no meaningful way to contact Defendants, Plaintiff should not be required to give Defendants notice of these proceedings because doing so would cause Plaintiff further irreparable harm. Ex. 2, ¶¶ 7-8. There are no less drastic means to protect Plaintiff's interests.

As stated in Plaintiff's Complaint, each Defendant has, through one or more fully interactive commercial Internet websites, pursued sales from Texas residents by offering shipping to Texas,[6] and on information and belief, has sold and continues to sell products to consumers within the State of Texas through infringing use of the Media. Without the benefit of an evidentiary hearing, Plaintiff bears only the burden of making a prima facie case for personal jurisdiction—all of Plaintiff's asserted facts should be accepted as true and any factual determinations should be resolved in its favor. *Johnston v. Multidata Sys. Int'l Corp.,* 523 F.3d 602, 609 (5th Cir. 2008).

---

[6] *See also* Exhibit 2 to Plaintiff's Complaint.

**B.  Plaintiff is Entitled to a TRO and Preliminary Injunction Against the Defendants**

District courts in this Circuit apply the same standard for temporary restraining orders and preliminary injunctions.[7] A party requesting a temporary restraining order must demonstrate "(1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest." *Emerald City Mgmt., L.L.C. v. Kahn*, 641 F. App'x 410, 413 (5th Cir. 2016).

### i.  Plaintiff Will Likely Succeed on Its Copyright Infringement Claims

A plaintiff is likely to succeed on a copyright infringement claim if it establishes: (1) ownership in a valid copyright and (2) copying by the defendant. *See Lakedreams v. Taylor,* 932 F.2d 1103, 1007-08 (5th Cir.1991) ("To establish 'ownership,' the plaintiff must prove that the material is original, that it can be copyrighted, and that [the plaintiff] has complied with statutory formalities"). Copying can be proven through direct evidence of copying or through circumstantial evidence demonstrating that the defendant had access to the copyrighted work and that the works are "probatively" similar. *Gen. Univ. Sys., Inc. v. Lee,* 379 F.3d 131, 141-142 (5th Cir. 2004). Access need not be shown where "the two works are so strikingly similar as to preclude the possibility of independent creation." *Id.* at 142.

Plaintiff's Media is wholly original and proprietary to Plaintiff. Ex. 1 ¶ 4. Plaintiff's ownership of the Registrations further establishes that the U.S. Copyright Office has attested to the validity of the Registrations, the facts stated in the corresponding certificates, and that Plaintiff is the rightful owner of the Registrations. *See Gen. Universal Sys.*, 379 F.3d at 141. Plaintiff has been selling its proprietary adjustable socket wrenches for many years worldwide (Ex. 1 ¶ 6),

---

[7] *See*, e.g., *Gadasalli v. Bulasa*, No. 4:22-CV-249, 2022 U.S. Dist. LEXIS 61791, at *4 (E.D. Tex. 2022); *Santiago v. Bank of N.Y. Mellon*, No. 4:18-CV-00533-ALM-CAN, 2018 U.S. Dist. LEXIS 220483, at *2 (E.D. Tex. 2018).

circumstantially establishing Defendants' access to the Media. Further, in viewing an example of Plaintiff's use of the Media with an example of Defendants' infringing use of the Media, a layman would undoubtedly view these works as not only probatively similar, but substantially similar:

| Plaintiff's Registered Images | Defendants' Infringing Images |
| --- | --- |
| | |



It is plain to see that there is no possibility that Defendants independently created the infringing media, which are "so strikingly similar," and in fact, identical, to Plaintiff's Media. Indeed, each Defendant uses the exact Media subject to Plaintiff's Registrations. Through Defendants' infringing conduct, including Defendants' willful and infringing use and reproduction of the Media, Defendants have directly infringed Plaintiff's exclusive rights in the Media under the Copyright Act. For all of the above reasons and those stated in Plaintiff's Complaint, Plaintiff is therefore likely to succeed on the merits of its copyright infringement claims against Defendants.

ii. **There is a Substantial Threat That Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief**

Courts in the Fifth Circuit have found that "[w]hen a plaintiff seeks an injunction under the Copyright Act, the plaintiff establishes a rebuttable presumption of irreparable harm when the plaintiff shows that a valid copyright has been infringed." *MGE UPS Sys., Inc. v. Fakouri Elec. Eng'g*, 2004 WL 2187143, at *2 (N.D. Tex. 2004) (citing *Dallas Cowboy Cheerleaders, Inc. v. Scoreboard Posters, Inc*., 600 F.2d 1184, 1187 (5th Cir.1979)). Further, where a plaintiff proves a substantial likelihood of success on the merits of a copyright infringement claim, "a preliminary injunction should not be denied simply because plaintiffs can recover monetary damages[.]" *Olan Mills, Inc. v. Eckerd Drug of Tex., Inc*., 1988 WL 161314, at *2 (N.D.Tex.1998)).

Defendants' infringing use of the Media has and continues to irreparably harm Plaintiff by depriving Plaintiff of the ability to control use and licensing of its Media, by substantially reducing Plaintiff's sales of its genuine products (Ex. 1 ¶¶ 12-13), and by preventing Plaintiff from enjoying the exclusive rights conferred by the Copyright Act (17 U.S.C. § 106). Such loss of control over the Media is neither calculable nor precisely compensable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. Further, Plaintiff has established a rebuttable presumption of irreparable harm by virtue of its showing that Defendants have infringed its valid Registrations. Plaintiff is thus entitled to preliminary relief under the "irreparable harm"

factor.

### iii. The Balance of Harm Tips In Plaintiff's Favor

Courts within the Fifth Circuit have long held that the balance of hardship supports protecting a plaintiff's copyright. *See, e.g., Olan Mills, Inc*., 1988 WL 161314, at *3 (finding that the defendant's infringing conduct resulted in the loss of a primary source of the plaintiff's income, and that the defendant will suffer minimal hardship if enjoined from further infringing on the plaintiff's copyright); *see also Worlds of Wonder, Inc. v. Veritel Learning Sys., Inc*., 658 F. Supp. 351, 357 (N.D. Tex. 1986) (finding that even if an infringing defendant could establish that an "injunction would have a devastating effect on its business," the court should not permit an infringer to construct its business around its infringement and deny preliminary injunctive relief).

Plaintiff is entitled to protect the integrity of its intellectual property and its Media, and it continues to suffer hardship as long as Defendants are using, reproducing, and displaying the Media through the Infringing Webstores. As willful infringers, Defendants are entitled to little equitable consideration, for the only hardship Defendants would face would be to simply cease their infringing conduct. Thus, the balance of equities tips decisively in Plaintiff's favor, and equity requires Defendants to be ordered to cease their infringing conduct.

### iv. Issuance of the Injunction Is in the Public Interest

There is a public interest in preserving rights provided by federal copyright law. *Lakedreams*, 932 F.2d at 1110. Further, courts in this district have found that the public interest "is always served by requiring compliance with Congressional statutes . . . and by enjoining [infringement]." *Gibson Brands, Inc. v. Armadillo Distribution Enters*., No. 4:19-CV-358, 2022 U.S. Dist. LEXIS 134483, at *11 (E.D. Tex. 2022). The public interest factor thus also weighs in favor of an injunction because the public interest—and the Copyright Act itself—would be undermined if Defendants' infringing conduct is allowed to stand. Permanently enjoining Defendants will therefore actually *advance* the public interest by protecting copyrighted works and

10

maintaining the integrity of the Copyright Act.

## C.  The Equitable Relief Sought Is Appropriate

The Copyright Act specifically authorizes the Court to "grant . . . final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). "[P]reliminary injunctions are a common judicial response to the imminent infringement of an apparently valid copyright." *Dallas Cowboys Cheerleaders*, 600 F.2d at 1187. Indeed, "[p]reliminary injunctions are a more common remedy in copyright infringement cases because the core value of the rights afforded by the Copyright Act is that they are 'exclusive.'" *Olan Mills*, 1988 WL 161314, at *2 (citing 17 U.S.C. § 106). Furthermore, Rule 65(b) of the Federal Rules of Civil Procedure provides that a court may issue a temporary restraining order without notice where facts show that the movant will suffer immediate and irreparable injury or loss before the adverse party can be heard in opposition. Rule 65(d)(2)(C) also authorizes this Court to bind any third parties "who are in active concert or participation" with Defendants, or with Defendants' agents and are given actual notice of the order—in this case, this includes the relevant e-commerce Marketplace platforms, payment processors, and financial institutions connected with Defendants. The facts in this case warrant such relief.

### i.  A Temporary Restraining Order Immediately Enjoining Defendants' Infringing Reproduction and Display of Plaintiff's Media is Appropriate

Plaintiff requests an order requiring Defendants to immediately cease all infringing use of its Media. The Copyright Act specifically provides that "[a]ny court having jurisdiction of a civil action arising under this title may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). An *ex parte* order is appropriate where there is a danger that the defendant will destroy or hide evidence. *See Century Home Ent., Inc. v. Laser Beat, Inc.*, 859 F. Supp. 636, 638–639 (E.D.N.Y. 1994) (a plaintiff need not show that a particular defendant would fail to adhere to a temporary

restraining order, "but rather only that someone like the Defendant would be likely to hide or destroy the evidence of his infringing activity"). In light of the extensive evidence of Defendants' acts of infringement, and the likelihood that parties like these Defendants will destroy or hide evidence to avoid liability, Plaintiff respectfully requests that this Court issue an *ex parte* order restraining Defendants from further reproduction and display of the Media pursuant to Fed. R. Civ. P. 65 and 17 U.S.C. § 502.

As discussed above, such relief is necessary to stop the ongoing harm to Plaintiff, and to prevent Defendants from continuing to benefit from their infringing use of the Media. The need for *ex parte* relief is magnified in today's global economy where infringers can operate on an international scale and anonymously over the Internet, for Plaintiff has not yet been able to discover the true identities and locations of Defendants. Ex. 1 ¶ 14-15. If immediate injunctive relief is granted, Plaintiff will be able to once again control use of the Media and enjoy its exclusive rights in the Registrations conferred by the Copyright Act. A temporary restraining order immediately enjoining Defendants' infringing reproduction and display of Plaintiff's Media is therefore appropriate and necessary to preserve both Plaintiff's rights, as well as the integrity of the Copyright Act itself.

### ii.  An Order Preventing the Fraudulent Transfer of Assets Is Appropriate

Plaintiff will ultimately be entitled to an equitable accounting of profits from Defendants' infringement of the Media and thus additionally respectfully requests an *ex parte* order restraining Defendants' assets to preserve this right. Specifically, on information and belief, Defendants hold most of their assets in China (Ex. 1 ¶ 16) making it easy to dispose of assets if an *ex parte* order is not issued, which would render an accounting by Plaintiff futile. An asset restraining order is therefore crucial to maintain the status quo and protect Plaintiff's right to an equitable accounting. Moreover, the amount of damages to which Plaintiff is entitled, as alleged in the Complaint, far

exceeds any sums likely held in Defendants' merchant accounts or other U.S.-based financial accounts at the time of a freeze. For instance, Plaintiff seeks an order requiring Defendants to provide a complete and detailed accounting of all profits derived from their use of the Infringing Images in connection with sales on the Infringing Webstores, to remit those profits in full to Plaintiff, and to pay Plaintiff's actual damages, to be proven at trial, pursuant to 17 U.S.C. § 504(b). In the alternative, Plaintiff seeks maximum statutory damages for willful infringement of the Registrations in the amount of $150,000 per Defendant pursuant to 17 U.S.C. § 504(c)(2). In either scenario, recovery would entitle Plaintiff to more than just the sales figures attributable to the Defendants' use of the Media to sell products online.

The Fifth Circuit and the Supreme Court have authorized pre-judgment asset restraints in cases where the plaintiff requests preliminary relief. *See, e.g., United States v. First Nat. City Bank*, 379 U.S. 378, 385 (1965) (the temporary injunction issued by the district court was appropriate to prevent dissipation of assets); *see also Deckert v. Indep. Shares Corp*., 311 U.S. 282, 290 (1940) (a district court has sufficient equitable powers to preliminarily freeze a defendant's assets in suits sounding in equity, and such an injunction "was a reasonable measure to preserve the status quo pending final determination"); *Animale Grp. Inc. v. Sunny's Perfume Inc*., 256 F. App'x 707, 709 (5th Cir. 2007) (an accounting of lost profits under the Lanham Act is "subject to the principles of equity[;]" and the district court was thus authorized to preserve the status quo by freezing the assets in question). Thus, this Court should preserve the status quo and issue *ex parte* injunctive relief by freezing Defendants' assets to prevent assets from being withdrawn and relocated to avoid satisfaction of a judgment.

The Supreme Court has noted that when equitable claims are at issue, as opposed to solely legal claims for damages, the rule barring issuance of a preliminary injunction freezing assets is inapplicable. *See Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc*., 527 U.S. 308, 324–

13

325 (1999) (distinguishing *Deckert*, because the *Grupo Mexicano* plaintiff had not sought equitable relief). Various Circuits have discussed that courts may restrain assets in cases where equitable relief is sought.[8] The *CSC Holdings* court even granted an asset freeze on the defendants pending final disposition of the case because "the assets in question were profits [defendants] made by unlawfully stealing [plaintiff's] services." *CSC Holdings, Inc.*, 309 F.3d at 996. Moreover, the Federal Rules of Civil Procedure give this Court the power to bind any third parties who are in active concert with Defendants that are given notice of an order freezing Defendants' assets. *See* Fed. R. Civ. P. 65(d)(2)(C).

Although Plaintiff seeks the legal remedy of damages for Defendants' infringing conduct, Plaintiff also seeks equitable relief in the form of a full accounting of all profits Defendants derived from their unauthorized use of the Infringing Images and an order requiring Defendants to remit those profits to Plaintiff. An asset freeze is therefore essential to preserve the Court's ability to provide complete equitable relief and to safeguard Plaintiff's right to a meaningful accounting and recovery of those profits. Without such relief, any final judgment awarding Plaintiff equitable remedies could be rendered ineffective, and Plaintiff's ability to recover both Defendants' ill-

---

[8] *See, e.g., Kennedy Bldg. Assocs. v. CBS Corp.,* 476 F.3d 530, 535 (8th Cir. 2007) (distinguishing *Grupo Mexicano* because "the underlying relief sought is equitable, rather than legal, so our case involves the use of equity in support of equity, rather than equity in support of a legal remedy"); *see also SEC v. ETS Payphones, Inc.,* 408 F.3d 727, 734 (11th Cir.2005) ("*Grupo Mexicano* does not control the outcome of this case, because the SEC seeks equitable relief (disgorgment) [sic], not just money damages"); *In re Focus Media Inc.,* 387 F.3d 1077, 1085 (9th Cir. 2004) (*Grupo Mexicano* . . . exempts from its proscription . . . cases in which equitable relief is sought"); *CSC Holdings, Inc. v. Redisi,* 309 F.3d 988, 996 (7th Cir. 2002) (the *Grupo Mexicano* "decision held that a district court may not issue an injunction freezing assets in an action for money damages where no equitable interest is claimed . . . [h]owever, the court specifically noted that a restraint on assets was still proper if a suit sought equitable relief"); *United States ex rel Rahman v. Oncology Assocs., P.C.,* 198 F.3d 489, 496–497 (4th Cir. 1999) (holding that *Deckert* still authorizes a district court to preliminarily freeze assets in a case involving equitable claims); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.,* 51 F.3d 982, 987 (11th Cir. 1995) ("A request for equitable relief invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief"); *Reebok Int'l, Ltd. v. Marnatech Enterprises, Inc.,* 970 F.2d 552, 559-560 (9th Cir. 1992) (the district court was authorized to grant plaintiff an accounting of defendant's profits and "had the inherent power to freeze [defendant's] assets in order to ensure the availability of that final relief . . . '[t]he injunction here enjoins the defendants from secreting those assets necessary to preserve the possibility of equitable relief'"); *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1364 (9th Cir. 1988) ("A court has the power to issue a preliminary injunction to prevent a defendant from dissipating assets in order to preserve the possibility of equitable remedies").

gotten profits and actual damages would be severely jeopardized. As such, this action primarily concerns equitable relief. *See McCaleb v. Fox Film Corp.*, 299 F. 48, 50 (5th Cir. 1924) (in a copyright case, although damages for infringement is a legal remedy, an accounting and injunctive relief are considered "equitable remedies"). Thus, as Plaintiff seeks an accounting of lost profits and injunctive relief, this Court should preserve the status quo by following *Deckert* and ordering an asset freeze on each Defendant's merchant and bank accounts.

Plaintiff has demonstrated a strong likelihood of success on its claims, ongoing irreparable harm from Defendants' use of the Media to sell products online, and the risk of Defendants hiding their assets. In light of the fact that Defendants use protected intellectual property to illegally turn a profit, it is reasonable to believe that Defendants will also improperly withdraw monies subject to an equitable accounting to locations which neither Plaintiff nor this Court will ever discover. *See Reebok Int'l Ltd.*, 737 F. Supp. at 1527 ("Due to the international aspect of the defendants' business, the Court is concerned that unless the assets are frozen, defendants may hide their allegedly ill-gotten funds"). Accordingly, an asset restraining order limiting the transfer of Defendants' assets is essential to maintain the status quo and to preserve Plaintiff's right to a meaningful equitable accounting and recovery of Defendants' wrongfully obtained profits.

### iii. Plaintiff Is Entitled to Expedited Discovery

Plaintiff also respectfully requests an *ex parte* Order expediting discovery so that Plaintiff may discover the names and email addresses for service of process, and online webstores operated by Defendants, as well as the Defendants' financial institutions and payment processors for purposes of enforcing orders from this Court. The discovery requested regarding Defendants' financial institutions and payment processors is limited to include only that which is essential to prevent further irreparable harm to Plaintiff and allow Plaintiff to recover from Defendants' infringing conduct.

Courts in the Fifth Circuit weigh several factors in balancing the need for disclosure of a defendant's information against the First Amendment expectation of privacy. These factors include: "(1) a concrete showing of a prima facie claim of actionable harm; (2) specificity of the discovery request; (3) the absence of alternative means to obtain the subpoenaed information; (4) a central need for the subpoenaed information to advance the claim; and (5) the party's expectation of privacy." *Funimation Entm't v. Does*, 2012 U.S. Dist. LEXIS 198168, at *4-5 (E.D. Tex. 2012).

As stated above, Plaintiff made a *prima facie* showing of copyright infringement by alleging that it owns the Registrations (Ex. 1 ¶ 4)[9] and that Defendants used the Media subject to the Registrations to reproduce and sell products online—all without Plaintiff's authorization (*Id*. at ¶¶ 10-11). Thus, the first factor weighs in favor of allowing expedited discovery. The second factor also weighs in favor of expedited discovery. Plaintiff has already identified the URL addresses linked to the Infringing Webstores where the Media is being used to sell products.[10] Plaintiff seeks only the associated Defendant names, Defendant email addresses, the online webstores operated by Defendants, the number of products each Defendant sold using the Media, where each such product was sold, and the identities of the Defendants' financial institutions and payment processors. Thus, the discovery is specific. The third and fourth factors further weigh in favor of expedited discovery. Plaintiff has obtained all the information it can through informal discovery means (Ex. 1 ¶¶ 10-12, 14-15) and will be unable to properly serve Defendants (and Defendants will be unable to respond to Plaintiff's allegations) without an order from this Court subpoenaing the requested Defendant information. Lastly, Plaintiff is entitled to expedited discovery due to Defendants' limited expectation of privacy. The policies of the e-commerce platforms used by Defendants explicitly state that subscribers, including Defendants, consent to

---

[9] *See also* Exhibit 3 to Plaintiff's Complaint.
[10] *See* Exhibit 2 to Plaintiff's Complaint.

the disclosure of their personal information to comply with court orders or protect third-party rights.[11] Accordingly, the fifth factor favors expedited discovery, as Defendants have minimal privacy expectations when selling products via the Infringing Webstores.

As demonstrated above, Plaintiff is being irreparably harmed by Defendants' infringing use of the Media, and Defendants have not provided reliable identifying or contact information on the Infringing Webstores. Without being able to discover and verify Defendants' true personal and contact information, Plaintiff will be unable to properly serve Defendants. Similarly, without being able to discover Defendants' bank and payment system accounts, any asset restraint would be of limited value because Plaintiff would not know the entities upon whom to serve the resulting order.

Fed. R. Civ. P. 65(d)(2)(C) authorizes this Court to bind any third parties "who are in active concert or participation" with Defendants and are given actual notice of the order, such as the relevant e-commerce platforms, payment processors, and financial institutions connected with Defendants. Plaintiff's request for the asset restraining order above may have little meaningful effect without expedited discovery. Accordingly, Plaintiff respectfully requests that expedited discovery be granted.

---

[11]

- AliExpress – "We disclose/share personal information . . . to comply with applicable laws . . ." Alibaba Group, *AliExpress.com Privacy Policy*, https://terms.alicdn.com/legal-agreement/terms/suit_bu1_aliexpress/suit_bu1_aliexpress 201909171350_82407.html?spm=service_hall.24300481.0.0.661f43003a9zJw, accessed March 7, 2025.
- Amazon – "We release account and other personal information when we believe release is appropriate to comply with the law" Amazon.com, Inc., *Amazon.com Privacy Notice*, https://www.amazon.com/gp/help/customer/display.html?nodeId=468496&ref_= footer_privacy, accessed March 7, 2025.
- eBay – "We process your personal data. . . to detect, prevent, mitigate and investigate fraudulent or illegal activity." eBay Inc., *User Privacy Notice*, www.ebay.com/help/policies/member-behaviour-policies/user-privacy-notice-privacypolicy?id=4260#section12, accessed March 7, 2025.
- Shopify – "When we are legally required to share your personal information, we will tell you in advance . . ." Shopify Inc., *Privacy Policy*, https://www.shopify.com/legal/privacy, accessed March 7, 2025.
- Temu – "We may use your personal information . . . to comply with laws, including any . . . lawful requests" WhaleCo, Inc., *Temu | Seller Privacy Policy*, https://jp.seller.temu.com/policy-page.html?type=5, accessed March 12, 2025.
- Walmart – "We may disclose your personal information when required by law or legal process" Walmart Inc., *Walmart Privacy Policy*, https://corporate.walmart.com/privacy-security/walmart-privacy-policy, accessed March 7, 2025.

**IV. Security Pursuant to Federal Rule of Civil Procedure 65(c)**

Under Fed. R. Civ. P. 65, the party seeking a preliminary injunction must "give[ ] security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Fifth Circuit has held that the security amount imposed is in the court's discretion, and that the "proper" amount of security may be zero. *See Corrigan Dispatch Co. v. Casa Guzman, S. A.*, 569 F.2d 300, 302–03 (5th Cir. 1978) ("The amount of security required is a matter for the discretion of the trial court; it may elect to require no security at all"); *see also Domain Prot., LLC v. Sea Wasp, LLC*, No. 4:18-CV-792, 2019 WL 3219939, at *11 (E.D. Tex. 2019) (there is no evidence that the defendant will suffer any harm from the issuance of an injunction); *Rohm & Haas Co. v. Cumberland Chem. Corp.*, No. H-82-1241, 1983 WL 52378, at *6 (S.D. Tex. 1983) (the parties were able "to respond to potential damages in the event th[e] injunction is ultimately overturned").

The evidence shows Defendants willfully infringed on Plaintiff's Registrations, and any harm to Defendants from the requested injunction will stem from their own infringing conduct. Plaintiff therefore requests that the Court exercise its discretion to waive any security requirement from Plaintiff. In the alternative, should this Court decide, in its discretion, to require Plaintiff to post security, due to the strong and unequivocal evidence of Defendants' infringement, Plaintiff respectfully requests that this Court require Plaintiff to post a bond of no more than $10,000.[12]

**V.    Conclusion**

Plaintiff has invested substantial time, effort, and resources in promoting its Products and obtained copyright registrations to safeguard its intellectual property. Despite this, Defendants unlawfully profit from Plaintiff's work and, without injunctive relief, will continue to irreparably

---

[12] *See, e.g., Farouk Sys., Inc.*, No. 4:10-cv-02672 (S.D. Tex. 2010) ($10,000 bond); *Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 459 (7th Cir. 2010) ($10,000 bond); *True Religion Apparel, Inc., v. Xiaokang Lee*, No. 1:11-cv-08242-HB (S.D.N.Y. 2011) ($10,000 bond); *The Nat'l Football League v. Chen*, No. 1:11-cv-00344-WHP (S.D.N.Y. 2011) ($10,000 bond); *Chanel, Inc. v. Zhixian*, No. 0:10-cv-60585-JIC (S.D. Fla. 2010) ($10,000 bond); *Gucci Am., Inc. v. Curveal Fashion*, No. 1:09-cv-08458-RJS-THK (S.D.N.Y. Oct. 9, 2009) ($10,000 bond).

harm Plaintiff by depriving it of exclusive rights under the Copyright Act. An *ex parte* order is necessary to protect Plaintiff's Registrations, uphold the Copyright Act, and prevent further harm. Accordingly, Plaintiff respectfully requests that the Court issue a temporary restraining order as submitted and schedule a status hearing before its expiration, where Plaintiff will seek a preliminary injunction.

Dated: March 9, 2026

Respectfully submitted,

**Scale LLP**

By: */s/ Charles A. Wallace*
Charles A. Wallace
Texas Bar No. 24110501
James H. Creedon
Texas Bar No. 24092299
3723 Greenville Ave., Suite 41010
Dallas, Texas 75206
Tel.      415.735.5933
Fax      415.573.0983
cwallace@scalefirm.com
jcreedon@scalefirm.com

ATTORNEYS FOR PLAINTIFF
█████████████████████████

## CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2026, I caused a true and correct copy of the foregoing to be filed on the Court's CM/ECF system, which served notice on all counsel of record.

By: */s/ Charles A. Wallace*
Charles A. Wallace

## CERTIFICATE OF CONFERENCE

No defendant has appeared yet in this case, and therefore, pursuant to Local Rule 7(i), undersigned counsel states that he is unable to meet and confer with the defendants and unable to state whether this motion is opposed.

By: */s/ Charles A. Wallace*
Charles A. Wallace

## MOTION TO FILE UNDER SEAL

I hereby certify that, in accordance with Local Rule CV-5(a)(7), a motion to seal the above document has been filed with this Court.

By: */s/ Charles A. Wallace*
Charles A. Wallace