**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

<table>
<tr><td><br><br>Plaintiff,<br><br>v.<br><br>THE INDIVIDUALS, BUSINESS ENTITIES, and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON EXHIBIT 1,<br><br>Defendants.</td><td>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§</td><td>CIVIL ACTION NO. 4:26-CV-00174-RWS<br>*SEALED*</td></tr>
</table>

## ORDER

Before the Court is Plaintiff ███████████████████ *Ex Parte* Motion for Entry of a (1) Temporary Restraining Order, (2) Expedited Discovery Order, and (3) Asset Restraining Order. Docket No. 6. On February 27, 2026, the Court heard argument on the motion. Docket No. 17. For the following reasons, the Court determines that Plaintiff's motion should be **DENIED WITHOUT PREJUDICE TO REFILING**.

## BACKGROUND

Plaintiff alleges that it manufactures, markets, and sells a line of ████████ products. Docket No. 1 at ¶¶ 14–17. In doing so, Plaintiff uses certain copyrighted images and videos of its products to exhibit and market its grills. *Id.* at ¶¶ 13, 16. According to Plaintiff, a group of competitor e-commerce retailers have misappropriated these images and videos to market and sell their own similar, but inferior, ████████ products on e-commerce platforms including AliExpress, Amazon, eBay, Fruugo, Shopify, Temu, and Walmart. *Id.* at ¶¶ 3, 21–22; Docket No. 6 at 3. Plaintiff claims that it has suffered a loss of goodwill as a result of the actions of 316

of these retailers, Docket No. 6 at 4, and to obtain redress, Plaintiff asserts claims for copyright infringement against them. Docket No. 1 at ¶¶ 27–33; *see generally* Docket No. 3.

## LEGAL STANDARD AND ANALYSIS

On the same day that Plaintiff filed its complaint, Plaintiff also filed the present motion, which seeks *ex parte* injunctive relief, namely, (1) an order restraining Defendants from using the copyrighted images and videos and (2) an order freezing Defendants' assets. Docket No. 6 at 4–15. In addition, Plaintiff's motion seeks (3) expedited discovery. *Id.* at 15–17. At the hearing, Plaintiff represented that, without an order freezing Defendants' assets, Plaintiff's case would be "untenable," and it would be futile for the Court to grant the other relief requested in Plaintiff's motion. Docket No. 17 at 31:6–23, 32:11–17. Accordingly, the Court will start and end its analysis with Plaintiff's request for an order freezing Defendants' assets.

### A.    Legal Standard

Generally, a plaintiff cannot obtain preliminary injunctive relief to freeze the assets of a defendant before prosecuting a case to judgment. *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319–20 (1999). This precept stems from the principle that "a general creditor (one without a judgment) had no cognizable interest, either at law or in equity, in the property of his debtor, and therefore could not interfere with the debtor's use of that property." *Id.* However, a plaintiff who owns a security interest or asserts an equitable interest in the assets sought to be frozen can obtain preliminary injunctive relief to restrain the transfer of such assets. *See, e.g.*, *id.* at 324–326; *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007) (determining that the equitable remedy of an accounting of profits could justify the issuance of an asset freeze order). "Simply including equitable claims in a complaint, however, is insufficient; the plaintiff must actually assert an equitable interest **in the assets**." *Turnkey Offshore Project Servs., LLC v. JAB Energy Sols., LLC*, No. 2:21-CV-672, 2021 WL 3509677, at *7 (E.D.

La. Aug. 10, 2021) (emphasis in original), *modified on other grounds*, No. 2:21-CV-672, 2022 WL 1699008 (E.D. La. May 2, 2022).

### B.    Analysis

Primarily, Plaintiff contends that it is entitled to an asset freeze order because it seeks equitable relief in the form of a permanent injunction enjoining Defendants from using Plaintiff's copyrighted images and videos. Docket No. 17 at 15:23–16:8; *see also* Docket No. 6 at 12–15. Plaintiff's motion also suggested that Plaintiff would be entitled to the equitable remedy of an accounting of profits, but Plaintiff's original complaint includes no demand for such relief. Docket No. 6 at 12. And at the hearing, Plaintiff made clear that it was not seeking such relief but rather only statutory damages and attorneys' fees. Docket No. 17 at 14:3–8. According to Plaintiff, the permanent injunction that it seeks bears a sufficient nexus to the assets sought to be frozen because "every single penny that each Defendant holds is a direct result of them using these marketing materials." *Id.* at 17:2–13.

The Court does not agree that the permanent injunction that Plaintiff seeks can support its request for an asset freeze order. The Supreme Court has already determined that "a United States District Court" does not have "the power to issue a preliminary injunction preventing the defendant from transferring assets ***in which no lien or equitable interest is claimed***." *Netsphere, Inc. v. Baron*, 703 F.3d 296, 309 (5th Cir. 2012) (emphasis added) (quoting *Grupo Mexicano*, 527 U.S. at 310, 333).

Further, *De Beers Consolidated Mines v. United States*, which was cited by *Grupo Mexicano*, concluded that the type of injunctive relief sought by Plaintiff here is insufficient to justify the issuance of an asset freeze order. 325 U.S. 212, 220–21 (1945). *De Beers* involved an antitrust action in which the United States sought permanent injunctive relief and civil fines against the defendants as well as preliminary injunctive relief to freeze the defendants' assets. *Id.* at 219.

As the *De Beers* court explained, the order freezing assets amounted to relief that could not "be afforded by any final injunction," and instead sought to restrain "property which in no circumstances can be dealt with in any final injunction that may be entered." *Id.* at 217, 220. For those reasons, *De Beers* struck down the asset freeze at issue. *Id.* at 220–21. *De Beers* explained that to hold otherwise would permit

> [e]very suitor who resorts to chancery for any sort of relief by injunction [], on a mere statement of belief that the defendant can easily make away with or transport his money or goods, [to] impose an injunction on him, indefinite in duration, disabling him to use so much of his funds or property as the court deems necessary for security or compliance with its possible decree.

*Id.* at 222. Such a remedy has not "been thought justified in the long history of equity jurisprudence." *Id.* at 223.

Here, by seeking a permanent injunction to enjoin infringement, Plaintiff does not show that it is entitled to a lien or any equitable interest in the assets held by Defendants. *Grupo Mexicano*, 527 U.S. at 310, 333. Further, the order to freeze assets is not relief that could "be afforded" by a permanent injunction to enjoin infringement of Plaintiff's copyrights but is rather wholly orthogonal to such relief and thus lies outside the equitable powers of the Court. *See De Beers*, 325 U.S. at 220–23.

Other courts in this Circuit have reached the same conclusion. In *Cajun Services Unlimited, LLC v. Benton Energy Service Co.*, the Eastern District of Louisiana determined that a bare request for injunctive relief, untethered from the assets sought to be restrained, could not justify an asset freeze order in an action involving trade secrets and patent infringement claims. No. 2:17-CV-491, 2020 WL 3000361, at *5 (E.D. La. Jan. 23, 2020) (explaining that the plaintiffs requested injunctive relief, "but did not assert any equitable interest in [the defendant's] assets").

Plaintiff's counterarguments are unconvincing. Plaintiff's motion cites no cases in which a court in the Fifth Circuit granted or affirmed the granting of an asset freeze order where the only equitable relief that the movant sought was a permanent injunction that did not afford the movant an equitable interest in the assets sought to be restrained.

During the hearing, Plaintiff directed the Court to several examples in which asset freeze orders had issued in purportedly similar circumstances. Docket No. 17 at 33:17–38:8; Docket No. 8 at 7; Docket Nos. 8-2–7. However, even though the plaintiffs in those suits may not have explicitly sought an accounting of profits in their complaints, the courts that issued those orders appear to have determined that the plaintiffs had brought such requests for relief. *See, e.g.*, Order at 7 n.3, *Multipla Ltd. v. The Individuals, Bus. Entities, & Unincorporated Associations Identified on Exhibit 1*, No. 4:25-cv-00622-MJT (E.D. Tex. June 16, 2025), ECF No. 14 (noting that the plaintiff did not seek an accounting of profits or disgorgement in its complaint but determining that allegations in the complaint "put a reasonable defendant on notice" that such equitable remedies would be sought); *Naughtys LLC v. Individuals, Bus. Entities, & Unincorporated Associations Identified on Exhibit 1*, No. 4:24-CV-00142, 2024 WL 1913135, at *5 (E.D. Tex. May 1, 2024) ("[The plaintiff] asserts that an asset freeze is critical to maintain the status quo and preserve its right to an equitable accounting."); *Brush Strokes Pottery Inc. v. Individuals, Bus. Entities, & Unincorporated Associations Identified on Exhibit 1*, No. 4:24-CV-00634, 2024 WL 3891827, at *4 (E.D. Tex. Aug. 21, 2024) (same). In the present case, the Court held a hearing and asked Plaintiff whether it planned to seek an accounting of profits to which Plaintiff clarified that it did not. Docket No. 17 at 14:3–8. Plaintiff did not indicate during the hearing that it would seek any other kind of equitable interest in the assets it seeks to freeze. Accordingly, all of Plaintiff's counterexamples are distinguishable.

Similarly, the *Animale* case that Plaintiff invokes actually cuts against its position. In *Animale*, the Fifth Circuit affirmed a temporary restraining order that froze the defendants' assets. 256 F. App'x at 709. The plaintiff in *Animale* had brought trademark claims against the defendants and sought permanent injunctive relief enjoining the defendants from infringing plaintiff's trademarks as well as an accounting of profits and monetary damages. *Id.* at 707–08; Original Complaint at 12–14, *Animale Grp., Inc., et al. v. Sunny's Perfume, Inc., et al.*, No. 5:07-cv-00013 (S.D. Tex. Jan. 25, 2007), ECF No. 3. In determining that the plaintiff asserted sufficient equitable relief to justify an asset freeze order, the Fifth Circuit did not even mention the permanent injunctive relief that plaintiff sought. Rather, consistent with the holding of *Grupo Mexicano*, the Fifth Circuit only considered equitable remedies that could result in the plaintiff having an equitable interest in the assets sought to be frozen. Accordingly, the Fifth Circuit explained that the accounting of profits remedy sought by the plaintiff was equitable in nature and could justify the issuance of the asset freeze order. *Animale*, 256 F. App'x at 709. Had permanent injunctive relief been sufficient to support the asset freeze order, the Fifth Circuit could have affirmed on that basis alone.

Plaintiff also relies on *United States v. First National City Bank*, 379 U.S. 378 (1965), and *Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940), but these cases are distinguishable for the same reasons articulated in the Supreme Court's decision in *Grupo Mexicano*. *First National* involved an action by the United States to enforce a tax assessment and tax lien. 379 U.S. at 379–80. As the *Grupo Mexicano* court explained, *First National* is distinguishable from the present case because the Supreme Court in that case was not analyzing a district court's general equitable powers but rather a district court's "powers under the statute authorizing issuance of tax injunctions." *Grupo Mexicano*, 527 U.S. at 326 (citing *First Nat'l*, 379 U.S. at 383). In *Deckert*,

the plaintiff sought equitable relief in the form of recission of contract and restitution. *Grupo Mexicano*, 527 U.S. at 324–25 (citing *Deckert*, 311 U.S. at 287–90). Unlike the permanent injunctive relief sought here, the equitable remedies sought in *Deckert* were directly tethered to the assets sought to be restrained and established an equitable interest in them.

Requiring Plaintiff to submit a signed pleading attesting that it is entitled to and is seeking cognizable equitable relief is no mere formality either. As one commentator has noted,

> [a] rule of procedure which allowed any prowling creditor, before his claim was definitely established by judgment, and without reference to the character of his demand, to file a bill to discover assets, or to impeach transfers, or interfere with the business affairs of the alleged debtor, would manifestly be susceptible of the grossest abuse. A more powerful weapon of oppression could not be placed at the disposal of unscrupulous litigants.

*Grupo Mexicano*, 527 U.S. at 330 (quoting WAIT, FRAUDULENT CONVEYANCES § 73 at 110–11).

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that Plaintiff's motion (Docket No. 6) is **DENIED WITHOUT PREJUDICE TO REFILING**. It is further

**ORDERED** that should Plaintiff seek to amend its complaint to assert cognizable equitable relief, Plaintiff shall file an amended complaint no later than **seven (7) days** after the entry of this Order. It is further

**ORDERED** that, within **seven (7) days** of the entry of this Order, Plaintiff **SHALL** move to file a redacted version of this Order. Plaintiff's motion **SHALL** provide proposed redactions, describe the confidential information in those proposed redactions, and provide good cause for each redaction. Or, if no redactions are necessary, Plaintiff **SHALL** file an unsealed and unredacted version of the Order with a cover page stating that no redactions are needed. If Plaintiff believes that good cause exists to extend this deadline, it may file a motion seeking such an extension.

**So ORDERED and SIGNED this 4th day of March, 2026.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE