IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| PRECISION CUT METALS LLC, PLAINTIFF, | )( | CIVIL ACTION NO. 4:26-CV-174-RWS TEXARKANA, TEXAS |
| VS. | )( | |
| THE INDIVIDUALS, BUSINESS ENTITIES, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON EXHIBIT 1, DEFENDANTS. | )( | APRIL 14, 2026 10:01 A.M. |

MOTION HEARING

BEFORE THE HONORABLE ROBERT W. SCHROEDER III

UNITED STATES DISTRICT JUDGE

FOR THE PLAINTIFF: Mr. Charles A. Wallace
Scale LLP
315 Montgomery Street
10th Floor
San Francisco, CA 94104

COURT REPORTER: Ms. Shelly Holmes, CSR, TCRR
Official Court Reporter
Honorable Robert W. Schroeder III
United States District Judge
Eastern District of Texas
Texarkana Division
500 North State Line Avenue
Texarkana, TX 75501
shelly_holmes@txed.uscourts.gov

(Proceedings recorded by mechanical stenography, transcript produced on a CAT system.)

10:01:20 COURT SECURITY OFFICER: All rise.

10:01:21 THE COURT: Please be seated.

10:01:28 Good morning.

10:01:30 MR. WALLACE: Good morning, Your Honor.

10:01:32 THE COURT: Ms. Combs, if you would call the case 10:01:34 for us.

10:01:35 COURTROOM DEPUTY: Cause No. 4:26-CV-174, 10:01:39 Precision Cut Metals LLC versus Individuals, Business 10:01:39 Entities, and Unincorporated Associations Identified on 10:01:44 Exhibit 1.

10:01:44 THE COURT: Announcements for the record?

10:01:47 MR. WALLACE: Your Honor, Charles Wallace here for 10:01:50 Plaintiff Precision Cut Metals LLC.

10:01:52 THE COURT: All right. Good morning.

10:01:53 MR. WALLACE: Good morning.

10:01:54 THE COURT: Mr. Wallace, nice to see you again.

10:01:57 We are here on your motion for preliminary 10:02:04 injunction. You were here a couple of weeks ago. I 10:02:10 believe, let's see, when was it? Oh, yeah, you were here 10:02:14 back in February for an ex parte motion on a TRO. We 10:02:20 subsequently denied that motion without prejudice to 10:02:23 re-filing. You did re-file it. And we entered that on 10:02:32 March the 17th of 2026. That may be found at Docket No. 10:02:37 25.

10:02:38 We're now here on your motion for preliminary

10:02:43 injunction. I look forward to whatever presentation you have to make today.

MR. WALLACE: Thank you, Your Honor.

So Plaintiff is here today to respectfully request that the Court extend the same -- the same relief that was granted in the TRO, aside from the discovery request, which was fully effectuated on all of the marketplaces.

For the record, Your Honor, Plaintiff did file -- or did present the TRO to all of the marketplaces and has since gained each of the Defendant's store names, email addresses, store balances, amount of infringing products sold, and in some cases other information, as well, such as a -- various individual ID for the item that was being sold.

And as Your Honor may also notice from the docket, we did serve each of the Defendants, as well. We filed our summons, returned as executed, as Docket No. 40, in which we also provided Defendants notice of this hearing today.

As Your Honor can see, none of the Defendants have shown up. We are simply requesting an extension of the relief ordered in the TRO, minus the -- the expedited discovery request, which we have already effectuated on the marketplaces.

THE COURT: Okay. And I noticed there have been a

10:04:27 number of dismissals, as well.

10:04:34 MR. WALLACE: Yes, Your Honor.

10:04:35 THE COURT: Can you provide me some background on 10:04:37 that?

10:04:37 MR. WALLACE: Yes, Your Honor. Yes, Your Honor. 10:04:38 Those seven dismissals were undertaken after confidential 10:04:47 settlement agreements were reached between Plaintiffs and 10:04:49 those specific seven Defendants. There are many more in 10:04:52 process, Your Honor. We just wanted to make sure that the 10:04:55 Defendants who were fully settled and had paid the 10:04:58 confidential settlement amounts were on the docket ahead of 10:05:02 this hearing.

10:05:03 THE COURT: Okay. Fair enough.

10:05:04 Okay. So I think the relief you're asking for is 10:05:09 substantially the same as the relief the Court ordered in 10:05:13 the TRO. You're just asking it to be in the form of a 10:05:20 preliminary injunction as opposed to a temporary 10:05:22 restraining order.

10:05:27 Just for purposes of the record, I think maybe you 10:05:31 should just go through the factors that are required before 10:05:34 entry of a preliminary injunction.

10:05:38 MR. WALLACE: Of course, Your Honor.

10:05:39 So those four factors, as you know, are that the 10:05:42 Plaintiff would be likely to succeed on the merits of the 10:05:45 case; number two, the substantial threat that Plaintiff

10:05:49 will suffer irreparable harm in the absence of such relief; number three, the balance of harm must tip in Plaintiff's behavior; and number four, the issue of the injunction must be in the public's favor.

Turning to the first factor that Plaintiff is likely to succeed on the merits of the case, as Your Honor is aware, Plaintiff does own valid copyright registrations and the five registrations at issue in this case. So that does satisfy that first tenet of the first element.

The second is that we need to show copying by the Defendants. As we -- as we show in the complaint, Your Honor, the images that are used by the Defendants and the videos used by the Defendants, in many cases using our client's Slot Grill name, the proprietary name, which is also a registered trademark, they are substantial similarity. They are, in fact, copies of our client's protected photos. So, therefore, we submit that Element 1 is satisfied.

THE COURT: Have there been any actual sales in Texas?

MR. WALLACE: Yes, Your Honor.

THE COURT: Okay. And is there -- can you tell me the extent of that or provide a little background about that? How do we know that, and how many have there been?

MR. WALLACE: I can't tell you exactly how many

there have been, but there have been among the various Defendants hundreds, if not thousands, of sales into the state of Texas.

We do know that to some extent because some of the marketplaces have provided us with information on Texas sales. Most have not. And many of the Defendants have -- when they reached out to us in these confidential settlement discussions and settlement agreements have divulged sales made into Texas, as well.

So we are aware that -- that many of these Defendants, if not all, have made sales into Texas.

THE COURT: Okay. The reason I asked, and you're probably familiar with this recent Seventh Circuit case, which vacated and remanded to the District Court on jurisdictional grounds where -- I haven't read the case myself, but it's my understanding that apparently there were -- there was nothing in the record about whether any completed purchase had been made, and so the -- the question was whether the Court had jurisdiction.

You're telling me as an officer of the Court that you're certain hundreds of sales have been made into Texas in this case?

MR. WALLACE: Among the various Defendants, Your Honor, our data has shown that hundred -- that hundreds of sales have been made into Texas in this case.

THE COURT: All right. Good enough.

MR. WALLACE: Moving to the second element, Your Honor, which is the substantial threat the Plaintiff will suffer irreparable harm in the absence of relief, we have shown through the declaration of the owner of Precision Cut Metals LLC, the Plaintiff in this case, that his sales have markedly decreased since this case began. He has noticed that many of these Defendants, in fact, all of these Defendants are undercutting his prices, again, using the exact same copyrighted photos, and he has already suffered immeasurable harm because of these infringements.

Not only that, Your Honor, but our -- our client has also included in his declaration that there have been third parties that have contacted him complaining about the quality of the products that they have purchased or complaining about some other potential facet of the products that they have purchased, when, in fact, these Defendants did -- or, I'm sorry, these third parties had not purchased the actual genuine product from the Plaintiff.

So not only are these sales being undercut, but the good will associated with these quality products made here in Texas are being severely compromised by Defendants using cheap products to manufacture them overseas, undercutting prices, and then shipping them abroad all over

10:10:11 the world, including into Texas. Therefore, we do submit
10:10:14 that the second element has been satisfied here, as well.
10:10:17 Third, Your Honor, the balance of harm factor, we
10:10:20 believe, tips in Plaintiff's favor because the only harm
10:10:23 that these Defendants would receive by issuance of the
10:10:25 preliminary injunction is simply to stop their infringing
10:10:29 conduct and to not secret away funds that were gained
10:10:35 through the offering and sale of these products during the
10:10:39 pendency of this litigation.
10:10:40 We have already found that the TRO with this
10:10:43 relief has been very effective. We have already settled
10:10:47 seven Defendants in this case. We expect to settle many
10:10:49 more if not most of the remaining Defendants in this case,
10:10:54 Your Honor. We will be filing less -- less notices of
10:10:57 dismissal. Again, we only filed those two in such quick
10:11:02 succession here to make sure that there was a clear record
10:11:04 before today's hearing.
10:11:05 But moving back to that third element, Your Honor,
10:11:09 the balance of harm does tip in Plaintiff's favor. We do
10:11:12 need these products to remain off of the various websites
10:11:17 where they have been sold. Plaintiff needs to be able to
10:11:20 recoup whatever losses he has lost during the pendency of
10:11:25 this lawsuit and the issuance of the TRO, and the
10:11:28 Defendants are not actually realizing any sort of
10:11:36 measurable harm aside from not being able to further

10:11:40 infringe on Plaintiff's copyrights.

10:11:43 And then lastly, Your Honor, as for Element 4, the issuance of the injunction being in the public's interest, as we argued in our February hearing, the public does have an interest in the laws of Congress being enforced. And so we would submit that this injunction is in the public's interest so that we can maintain the status quo pending a final injunction in this case.

10:12:11 THE COURT: Okay. Okay. Fair enough.

10:12:17 What is your expectation about further proceedings in the case? And the reason I ask that is typically, once the Defendants have appeared and either answered the complaint or otherwise moved against the complaint by filing some type of a motion, we would set it for a scheduling conference and send out a trial setting, a proposed trial setting, along with other dates. We would order the parties to meet and confer on the schedule, utilizing the dates we have provided, and then submit a proposed DCO, a proposed discovery order, a protective order, if necessary, and the like, and then we'll schedule it for a scheduling conference.

10:13:14 The vast majority of the time, the parties work all that out, and we end up canceling the scheduling conference and just entering the proposed DCO, discovery order, and protective order.

I don't think based on what you've said about this case it's going to proceed in exactly that way. So what insight can you give us in terms of how you expect -- what you -- what you think we can do to assist?

MR. WALLACE: Your Honor, what Plaintiff would respectfully request is issuance of the preliminary injunction order, after which Plaintiff expects to file a motion for default judgment in this case in the coming couple of weeks so that we can move this case on toward default judgment. And during the pendency of that motion, I expect there will be one or more notices of dismissal, as well, for other Defendants who have been reaching out even as of this morning, Your Honor, to get them off of this case and settled with -- with Plaintiff.

THE COURT: Okay. So that's your expectation, and that sounds fine to me. In the event some event causes you to delay seeking a default judgment, I would suggest, say, every 30 days, you just provide a status update on what's going on in the case just so that we don't let it, you know, fall through the cracks, so to speak. So if you'll just, like, every 30 days file a status update. Would that be a problem?

MR. WALLACE: No, Your Honor. Are you -- for clarification, are you saying that you would like the status update after the motion for default judgment is

filed?

THE COURT: No, I'm saying if something causes you not to file a motion for default judgment.

MR. WALLACE: I see.

THE COURT: So if you file your motion for default judgment, we will let the response time, of course, run, and if there's any response, of course, consider that. Any reply that you file, we'd consider that, and then if necessary, set it for a hearing.

I'm just suggesting if it doesn't transpire that way and if for some reason you end up not filing your motion for default judgment in fairly short order, if you just would, you know, provide us with a status update about what's going on so that we don't just let it sit there.

MR. WALLACE: Yes, Your Honor.

THE COURT: Is that fair enough?

MR. WALLACE: Yes, Your Honor. Thank you.

THE COURT: Good. We will get your motion for -- or your preliminary injunction entered today on the docket. And if you would, request that the court reporter prepare the transcript from today's proceeding, I think we should have that in the record.

MR. WALLACE: Thank you, Your Honor.

THE COURT: Anything else?

MR. WALLACE: No, Your Honor. Thank you for your

10:16:12 time.

10:16:12 THE COURT: All right. Thanks for being here.

10:16:17 We'll be -- we'll be adjourned.

10:16:20 COURT SECURITY OFFICER: All rise.

10:16:20 (Hearing concluded 10:16 a.m.)

CERTIFICATION

I HEREBY CERTIFY that the foregoing is a true and correct transcript from the stenographic notes of the proceedings in the above-entitled matter to the best of my ability.

/S/ Shelly Holmes
SHELLY HOLMES, CSR, TCRR
CERTIFIED SHORTHAND REPORTER
State of Texas No.: 7804
Expiration Date: 10/31/2027

4/14/2026
Date